UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER HOMER RANDLE,<br><br>    Defendant. | Case No. 2:19-cr-00325-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Christopher Randle's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 47. The Government has filed an opposition to Randle's Motion. Dkt. 49. Randle filed a supplemental motion soon after. Dkt. 51.[1] The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

---

[1] Randle need not have filed this document as a stand-alone motion as it is simply his Reply to the Government's Response to his Motion for Compassionate Release. Nevertheless, the Court will consider the same.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On October 16, 2019, a grand jury returned a three-count indictment charging Randle with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Dkt. 1. Randle pled guilty, and on May 5, 2020, the Court sentenced him to 57 months imprisonment followed by three years of supervised release. Dkt. 44. Randle is serving his sentence at SeaTac Federal Detention Center ("FDC SeaTac"). His anticipated release date is April 25, 2022.

On July 17, 2020, Randle submitted a request for compassionate release to the Warden at FDC SeaTac. Dkt. 47, at 4–5. The Warden denied the request thirteen days later. *Id*. at 6–7. The request was predicated on Randle's pulmonary embolism, blood clotting, vein thrombosis, obesity, and the elevated risk presented by these conditions should Randle contract COVID-19. Randle's Bureau of Prisons ("BOP") medical records indicate that he has been diagnosed with chronic embolism and thrombosis of the blood vessels, high cholesterol, and obesity. *See generally* Dkt. 50. Randle is currently taking medication for all of these conditions. *Id.* Importantly, Randle has twice declined the COVID-19 vaccine when offered the opportunity. *Id.* at 75–6. Randle's present motion cites his blood clotting conditions and his blood thinning medication as the reason for his refusal to be vaccinated. Dkt. 47, at 2.

## III. LEGAL STANDARD

Randle seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under

certain circumstances.[2] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

**A. Exhaustion of Administrative Remedies**

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP

---

[2] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 3

denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Randle submitted a request for Compassionate Release with the Warden on July 17, 2020, and his request was denied on July 30, 2020. Dkt. 47, at 4–7. Because Randle filed his present motion after his request to the Warden was denied, the Court finds that he has exhausted his administrative remedies.

**B. Extraordinary and Compelling Reasons**

Having determined that Randle has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Randle bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp.

3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, Randle's motion suggests that one of the specific scenarios set out in U.S.S.G. § 1B1.13 applies in this case. He argues that the threat of contracting COVID-19, in conjunction with an elevated risk of severe illness due to chronic embolism and thrombosis of the blood vessels, high cholesterol, and obesity, constitutes an extraordinary and compelling circumstance necessitating compassionate release under the "medical

condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[4] Dkt. 47.

As an initial matter, the Court notes that some of Randle's medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19. The CDC lists obesity and various heart and coronary conditions as underlying health conditions that can place individuals at an increased risk of severe illness from COVID-19.[5] However, the Government argues, and the Court agrees, that Randle's refusal to receive a COVID-19 vaccine weighs heavily against a finding of extraordinary and compelling circumstances.

The Government points out that many courts have found that prisoners who refuse COVID-19 vaccinations cannot present extraordinary and compelling circumstances, even

---

[4] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[5] *CDC Updates, People with Certain Medical Conditions,* (Updated May 13, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

MEMORANDUM DECISION AND ORDER - 6

in the presence of underlying health conditions. *See United States v. Jackson,* 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (noting that a prisoner suffering from obesity, type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol did not present extraordinary and compelling circumstances because there was "no apparent medical reason" that the prisoner declined the vaccine); *United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) (holding that "[a] prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination").[6] The Court agrees with this reasoning. It makes little sense for a prisoner to argue that he must be released because of the risk posed by COVID-19 while at the same time refusing to take a readily available vaccine that mitigates that risk almost entirely. Indeed, doing so would likely encourage prisoners to remain unvaccinated.

Additionally, there is no evidence to suggest that Randle would be at lower risk to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v.*

---

[6] The Court acknowledges Randle's claim that he was "unable to take the COVID-19 vaccine while incarcerated due to his blood clot issues and blood thinner medication." Dkt. 47, at 2. However, the vaccine consent forms in Randle's BOP medical files indicate that he was given "the opportunity to ask questions about the benefits and risks of vaccination." *Id*. Moreover, the Government points out that the CDC has indicated that patients with disorders which require blood thinners "may be given [any COVID-19 vaccine], if a physician familiar with the patient's bleeding risk determines that the vaccine can be administered intramuscularly with reasonable safety." Dkt. 49, at 12. Indeed, Randle has not pointed the Court to any research, article or record that demonstrates that patients taking blood thinners should not be vaccinated for Covid-19.

https://www.cdc.gov/vaccines/covid-19/downloads/pre-vaccination-screening-form.pdf#:~:text=As%20with%20all%20vaccines%2C,intramuscularly%20with%20reasonable%20safety

*Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"). Indeed, as of July 20, 2021, FDC SeaTac has reported zero active cases among inmates and only one active case among staff.[7]

The Government also argues that the 18 U.S.C. § 3553(a) factors weigh against Randle's release.[8] Dkt. 49, at 9–11. The Court agrees. Randle has failed to demonstrate

---

[7] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed July 20, 2021).

[8] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

how release, after having served about half of t a sentence for a serious drug crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. As outlined by the Presentence Investigation Report, Randle distributed sizeable quantities of methamphetamine on many occasions. Dkt. 40. He has a lengthy criminal history that spans nearly four decades. *Id.* That history includes violent and nonviolent offenses and both state and federal felonies. *Id.* And despite multiple, lengthy, prison sentences, Randle has continued to recidivate. The Court agrees with the Government's argument that the public is currently best protected by Randle's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Randle early.

In sum, the Court finds that Randle has exhausted his administrative remedies. However, Randle has failed to demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Randle at this time. Accordingly, the Court must DENY Randle's motion.

///
///
///

---

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 9

## V. ORDER

The Court HEREBY ORDERS:

1. Randle's Motion for Compassionate Release (Dkt. 47) is DENIED.

2. Randle's Motion For Judicial Notice (Dkt. 51) is GRANTED.

DATED: July 23, 2021

_____
David C. Nye
Chief U.S. District Court Judge